IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| SCOTT E. KRESGE dba<br>SCOTT KRESGE ENTERPRISES, | : | BANKRUPTCY NO.: 5-11-bk-01881-JJT |
| DEBTOR | : | |
| CHARLES J. DeHART, III,<br>STANDING CHAPTER 13 TRUSTEE<br>and<br>PNC BANK, NATIONAL ASSOCIATION,: | : | {**Nature of Proceeding**: Objections to Chapter 13 Plan (Doc. Nos. 23 and 24)} |
| OBJECTORS | : | |
| vs. | : | |
| SCOTT E. KRESGE dba<br>SCOTT KRESGE ENTERPRISES | : | |
| RESPONDENT | : | |

# OPINION

As is relatively common, a simple set of facts poses a question of law of some complexity. It comes to me by way of two objections filed to the Debtor's Chapter 13 Plan.

The Debtor, Scott Kresge, filed a Chapter 13 bankruptcy on March 17, 2011. About the time of filing, his lawyer searched the county records and discovered that, in 2006, Scott's parents, Carl and Sandra Kresge, deeded to Scott and his brother, David, a parcel of property upon which was located a construction business known as Carl L. Kresge and Sons, Inc. That business is solely owned by Carl Kresge, Debtor's father. Neither the Debtor nor his brother are affiliated with the business. As he must, the Debtor disclosed his apparent "ownership" interest in the property on his bankruptcy Schedule A, as follows:

> Garage Property Titled with Brother David Kresge
>
> Was placed in their name unbeknownst to them by father. Father uses the property alone and pays all taxes and costs. Debtor never used the property, has no claim to it, never accepted it, and discovered ownership by post bankruptcy title search.

This conflicts slightly with the statement of Debtor's counsel that this information was discovered shortly *before* the bankruptcy. Transcript of 9/13/2011 at 8.

Consistent with the Debtor's position, he offered a Chapter 13 Plan that ignored the titled property as an asset of the estate. This position generated an Objection to the Plan by the Trustee, as well as a creditor, PNC Bank, N.A., which maintains a judgment against the Debtor filed in Luzerne County, effecting a lien against the property.

The factual testimony offered by the Debtor and his father was undisputed, with the controversy centering solely around the legal ramifications of the undisputed facts. To summarize, Carl Kresge testified that, in 2006, he, along with his spouse, deeded the property to his sons "to put it in their name so that just in case something happened to myself or Sandy," but he had no intention of surrendering possession. Transcript of 9/13/2011 at 18. Carl stated that he used the property as a base of his business operations, paid all taxes and maintenance on the property, and never disclosed to his sons that the transfer was made. The Debtor testified that he had no knowledge of the "gift" until his bankruptcy lawyer noted it in a search of the records.

Carl is an established businessman of some 30 years experience in the construction industry. The deed was drafted by a lawyer and, apparently at Carl's request, was recorded in the county records. The Debtor's counsel opined that Carl was attempting to transfer a "future interest." Transcript of 9/13/2011 at 13.

Debtor argues two theories in defending his Chapter 13 Plan. First, the Debtor acquired

no title since he had no knowledge and he could not have accepted the deed.  Second, if the deed is deemed accepted by him, the deed by his parents created a resulting trust which meant that no beneficial interest flowed to the Debtor.

An analysis of the facts of this case starts with an inquiry as to whether the deed recorded by the grantors, (Debtor's Exhibit 1), was delivered to the grantees.  Property rights in bankruptcy are determined under state law.  *Butner v. United States*, 440 U.S. 48, 55 (1979).  As to this first defense, Pennsylvania law is clear.

> The presumption of delivery based on the action of the donor in having the instrument recorded may be rebutted by evidence that he did not intend the instrument to operate as a valid assignment. But the chancellor's finding that there was in fact no delivery of the instruments was not a finding that the donor did not intend the assignment to be legally operative. The fact of no physical delivery of these instruments into the hands of the donees does not negative the fact of a legally operative delivery.  By recording these instruments, the donor ended his power of disposition over them.  Had he merely delivered the assignments, his power and control over the obligations assigned would not have ceased until the instruments were recorded.  Once the assignments were recorded, title and all its incidents passed to the donees. *Their ignorance of the transfers did not affect the fact of transfers*.  The assignments were for their benefit, and in such a case the title passes, subject only to being divested at the election of the donees upon their acquisition of knowledge.

*Henderson v. Hughes,* 320 Pa. 124, 127-128, 182 A. 392, 393-394 (Pa.1936)(emphasis mine).

State law in Pennsylvania is clear on the conclusion that delivery has occurred upon recordation.

Having found that there was delivery of the deed, is there any evidence on the record that the conveyance was rejected by the Debtor or his brother?  While the implication of the language set forth in Schedule A of the bankruptcy filings and heretofore referenced, suggests an intent by the Debtor to reject the conveyance at some point, neither the Debtor nor his brother have indicated in the 13 Plan or otherwise, in writing or orally, that they, in fact, reject the transfer of

the property. Presumably, the Chapter 13 Debtor has the power, subject to the provisions of the code, to reject the transfer since certain § 363 powers to convey property are specifically reserved to the Debtor and, I presume, that would include the power to reject a delivery. 11 U.S.C. § 1303. I find that no rejection has taken place.

The title of this property is, thus, in the hands of the Debtor and his brother.

The second inquiry centers around whether there is some limitation to the conveyance of property by Carl and Sandra Kresge to their two sons, David and Scott. The Debtor argues that he holds the property in question subject to a resulting trust so that its value should not be calculated when determining the value of property to be distributed pursuant to a thirteen plan under 11 U.S.C. § 1325(a)(4). Section 541(d) of the Bankruptcy Code makes clear that if the Debtor holds no equitable interest in property, then property of the estate is likewise limited.

The concept of resulting trust finds its origin in 15th and 16th century England where it was common practice for landowners to have their land titled in others. It was generally assumed that if land was purchased and put in the name of another, the title holder would hold the land for the purchaser. Since it was presumed the land was held for the "use" of the purchaser, it was known as a resulting use. This doctrine has been applied to modern trusts and thus is known as a resulting trust. See V William F. Fratcher, *Scott on Trusts* § 440 at 134 et seq.(4th ed. 1989).

Section 404 of the Restatement (Second) of Trusts states:

A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of.

Pennsylvania has embraced this provision of the Restatement. *Mooney v. Greater New Castle Development Corp.*, 510 Pa. 516, 521-522, 510 A.2d 344, 346 (1986). Furthermore,

> One who seeks to establish the existence of a resulting trust bears a heavy burden of proof; the evidence must be "clear, direct, precise, and convincing." *Policarpo v. Policarpo*, 410 Pa. 543, 189 A.2d 171 (1963); see also *Wosche v. Kraning*, 353 Pa. 481, 46 A.2d 220 (1946); cf. *Sayre Estate*, 443 Pa. 548, 279 A.2d 51 (1971)*; Brose Estate*, 416 Pa. 386, 206 A.2d 301 (1965). This Court had held that "unless the evidence of the existence of an oral trust is of the highest probative value, equity should not act to convert an absolute ownership into an estate of lesser quantity." *Sechler v. Sechler*, 403 Pa. 1, 7, 169 A.2d 78, 81 (1961). The facts and circumstances from which a court may find a resulting trust should be of no lesser probative value.

*Masgai v. Masgai*, 460 Pa. 453, 333 A.2d 861 (1975).

Obviously, the Debtor can offer very little on this point because he was simply unaware of the conveyance until the time of filing bankruptcy. The Debtor relies solely on the testimony of Carl Kresge, one of the grantors, and a photocopy of the recorded deed from Carl and Sandra to the Debtor and his brother. Debtor's Exhibit 1. The deed is on a typical fee simple form dated February 10, 2006, and presumably recorded contemporaneously with its execution. (The exact date of recordation is difficult to decipher from the exhibit.). No consideration passed to Carl or Sandra in exchange for deeding the property to the Debtor and his brother. This raises the interesting point that "the old doctrine that a resulting use arises upon a gratuitous conveyance has disappeared in the modern law of trusts . . . ." *Scott on Trusts, supra,* § 405 at 14. Our jurisprudence expounds on this point and is articulated in Section 405 of the Restatement (Second) of Trusts:

> § 405. Gratuitous Conveyance
>
> Where the owner of property transfers it without declaring any trust, the transferee does not hold the property upon a resulting trust although the transfer is gratuitous.

To date, there has been no effort to either reject the deed or enforce a resulting trust. I note that an action to enforce a resulting trust must, by statute, be commenced within five years. 42 Pa.C.S.A. § 5526(3). The bankruptcy was filed in excess of five years after the deed was executed. Carl and Sandra have taken no steps to declare a resulting trust and, in fact, they may be too late.

While Carl's testimony makes it quite clear that he had no intention to part with possession of the real estate when he executed the deed, retention of possession is not fatal to making a gift. *Henderson v. Hughes,* 320 Pa. at 128, 182 A. at 394. "[T]he courts have . . . recognized in numerous cases that an unexplained transfer of money or property from a parent to a child raises a rebuttable presumption that a gift was intended." 83 Am. Jur. Proof of Facts 3d 295 (Feb. 2011). Carl's testimony does little to rebut this presumption. He indicated that he and his wife conveyed the property to his two sons because his "mother and father did this for me." He didn't tell his sons of the transfer because he "didn't believe in family squabbles . . . ." While it was Carl's intention to continue to operate the business out of the premises in question, he never suggested that the transfer was a mistake or that he didn't intend to convey the beneficial interest in the property. He apparently never initiated any effort to reverse the transaction. Carl neither expressly nor impliedly suggested that he intended that his sons hold the property in trust for him and his spouse as beneficiaries under a trust. In fact, the failure to alert his sons of the transfer militates against that conclusion. Indeed, the very essence of a trust would suggest that

there be some knowledge on the part of the recipient of legal title of the limitations of that grant.

I also note that the co-grantor of the deed, Sandy Kresge, did not testify. Being the mother of the Debtor, she would appear to have specific knowledge of the circumstances surrounding the transfer, and I could assume that the Debtor would have called her if her testimony would be helpful in establishing his argument.[1]

Debtor presents the Third Circuit Court of Appeals case of *In re Stewart*, as guiding the disposition of this case. *In re Stewart,* 325 Fed.Appx. 82, C.A.3 (Pa.), 2009[2].

In that case, John Stewart filed bankruptcy owning property that his mother, Caroline Stewart, had deeded to him two years earlier. The deed was prepared by a staffer in the office of Mrs. Stewart's legislative representative. Mrs. Stewart's purpose was to minimize inheritance taxes. When the deed was prepared and executed, " . . . *Mrs. Stewart and the Debtor subjectively considered Mrs. Stewart as continuing to be the owner of the Property*." *In re Stewart,* 368 B.R. 445, 448 (Bkrtcy. E.D.Pa. 2007). (Emphasis mine). I point this pivotal fact out because there was certainly an understanding between grantor and grantee at the time of the execution of the deed that the beneficial interest would not pass. In fact, several months after the initial transfer, Mrs. Stuart recovered the property so she could re-deed that legal title to her two children. In advancing the theory of resulting trust, Stuart relied on parole evidence, which is admissible to establish the existence of such a trust. *Galford v. Burkhouse*, 330 Pa.Super. 21, 30,

---

[1] "It is generally agreed that when a potential witness is available and appears to have special information relevant to the case, so that his testimony would not merely be cumulative, and where his relaship (sic) with one of the parties is such that the witness would ordinarily be expected to favor him, then if such party does not produce his testimony, the inference arises that it would have been unfavorable." *General Elec. Credit Corp. v. Aetna Cas. & Sur. Co.,* 437 Pa. 463, 478, 263 A.2d 448, 457 (Pa. 1970).

[2] I note that *Stewart* was not selected for publication by the Court.

478 A.2d 1328, 1333 (1984).

The *Stewart* decision was based on (1) a factual finding by the trial court that the grantor never intended to give away her home when she signed the deed to her son, the debtor, and (2) the legal conclusion that a resulting trust was created in the process.

This is precisely where the facts in the case before me differ from *Stuart*. Neither of the grantors here have offered any evidence that their intention was to retain the beneficial interest in the land when the property was deeded to two of their children. Sandra Kresge did not testify and Carl Kresge never once suggested that this presumed gift was not effective. The only one arguing the existence of a resulting trust is the Debtor who was completely oblivious of the terms of the transfer because he was kept in the dark as to the circumstances of the transaction. This is hardly the kind of "clear, direct, precise, and convincing" evidence required by the law to establish a resulting trust.

Finally, Scott on Trusts presents two examples to illuminate the issues before me. Where *A* purchases land and titles it to *B*, the presumption arises that *B* holds the land in trust for *A*. On the other hand, if *A owns* property and transfers it to *B*, one may infer that a gift was intended and the burden would be on *A* to establish an intention to create a trust. *Scott on Trusts, supra,* at 141-143. In this case, I conclude that Carl Kresge has not offered any evidence that he and his wife were attempting to create a trust by conveying this property. The Debtor, Scott, has no information to offer on this point. While Carl Kresge may have intended to create a life estate, the parole evidence rule would prevent the admissibility of testimony on that point.[3] *Manley v.*

---

[3] In *In re Yasipour*, I stated, as follows:
The rule is set out in the Restatement (Second) of Trusts § 38, as follows:
(1) If the owner of property transfers it inter vivos to another person by a written instrument in which it is declared that the transferee is to take the property for

*Manley,* 238 Pa.Super. 296, 309, 357 A.2d 641, 647 (Pa.Super. 1976).

The Debtor can, however, attempt to reject the unexpected conveyance of land to himself. Until such time, the Debtor must account for the value of his interest in this parcel as if it was available for distribution under Chapter 7. Accordingly, the Plan must fail under 11 U.S.C. § 1325(a)(4).

My Order will follow.

By the Court,

Date: February 15, 2012

John J. Thomas, Bankruptcy Judge
(CMS)

---

> his own benefit, extrinsic evidence, in the absence of fraud, duress, mistake or other ground for reformation or rescission, is not admissible to show that he was intended to hold the property in trust.
>
> Restatement (Second) of Trusts § 38 (1959)
>
> The Pennsylvania Supreme Court has adopted the Restatement (Second) of Trusts § 38 (1959). *Truver v. Kennedy*, 425 Pa. 294, 229 A.2d 468 (1967).
>
> In addition, Pennsylvania case law advises that I am not permitted to look beyond the four corners of the deed where the grantor's intentions are clearly expressed. 'All the language of the deed must be given effect and when the language of the deed is clear and unambiguous the intent of the parties must be gleaned solely from its language.' *In re Conveyance of Land Belonging to City of DuBois*, 461 Pa. 161, 172, 335 A.2d 352, 358 (1975). '[I]t is not what the parties may have intended by the language used but what is the meaning of the words.' *Teacher, et al. v. Kijurina*, 365 Pa. 480, 486, 76 A.2d 197, 200 (1950).
>
> *In re Yasipour,* 238 B.R. 289, 291 (Bkrtcy. M.D.Pa., 1999)